**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lafayette Moses,<br><br>        Plaintiff,<br><br>v.<br><br>United Healthcare Corporation, et al.,<br><br>        Defendants. | No. CV-19-05804-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Defendant UnitedHealthcare Insurance Company's ("UHIC") motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 8.) For the following reasons, that motion will be granted and this action will be terminated.

**BACKGROUND**

I.    <u>Factual Background</u>

The facts alleged in the complaint, which are presumed to be true for purposes of the motion to dismiss, are as follows.

On or around October 10, 2014, pro se Plaintiff LaFayette Moses enrolled in a Medicare Supplement Plan issued by UHIC. (Doc. 1-3 at 6 ¶ 3.)

Moses enrolled in the plan by telephone, and during that call a UHIC representative asked him if he had a current primary care physician. (*Id.* ¶¶ 4-5.) Moses stated that he did, and that the physician's name was Dr. William Womack, and the UHIC representative responded by saying that Dr. Womack was in UHIC's network and that Moses would be

allowed to retain Dr. Womack as his primary care physician. (*Id*.)

After this call, Moses received his membership identification card in the mail from UHIC, which did not reflect that Dr. Womack was his primary care physician. (*Id*. ¶ 6.) Moses called UHIC to ask why Dr. Womack's name was omitted from his card, and the UHIC representative apologized and told him he would receive a new identification card with Dr. Womack's name listed. (*Id*. at 7 ¶ 7.)

Moses never received the corrected identification card. (*Id*. ¶ 8.) Over the next few years, Moses periodically called UHIC to request a corrected card, and each time UHIC representatives promised to send him a new card. (*Id*. ¶ 9.) Each replacement card assigned Moses a different primary care physician. (*Id*.)

On or around January 7, 2018, Moses suffered a severe head, ankle, knee, and pelvis injury. (*Id*. ¶ 10.) He received emergency care using his UHIC identification card and followed up with Dr. Womack. (*Id*.)

On September 10, 2018, Moses visited an orthopedic surgeon for "very necessary prescribed follow-up care." (*Id*. at 8 ¶ 14.) UHIC denied the follow-up care without explanation. (*Id*.)

Following this denial of follow-up care, Moses called UHIC numerous times and was met with "a consistent pattern of obscurity." (*Id*. at 9 ¶ 22.) The UHIC representatives would advise Moses to call a particular person, and that person would advise Moses to call another. (*Id*. ¶ 23.) None of these individuals approved Moses's follow-up care. (*Id*.) UHIC representatives also, at other times, denied that Dr. Womack was in UHIC's network, denied that they had received a request for Moses to see an orthopedic surgeon, and "invalidated" Dr. Womack. (*Id*. at 11 ¶¶ 41-43.)[1]

…

…

---

[1] Additionally, Moses contends in his response to UHIC's motion to dismiss that, between June 14, 2019, and November 22, 2019, he sent several letters to the Department of Health and Human Services ("HHS"). (Doc. 11 at 2-3.) The first correspondence was a "report" detailing UHIC's alleged failings. (*Id*. at 2.) Subsequent correspondence to HHS complained about HHS forwarding this report to Moses's current insurance company, which played no role in UHIC's denial of care. (*Id*. at 2-3.)

II.     Procedural Background

On November 7, 2019, Moses initiated this lawsuit by filing a complaint in Maricopa County Superior Court.  (Doc. 1-3 at 5-14.)

On December 12, 2019, UHIC removed the action to this Court.  (Doc. 1.)

On December 19, 2019, UHIC filed its motion to dismiss.  (Doc. 8.)

On January 27, 2020, Moses filed a response.  (Doc. 11.)

On February 7, 2020, UHIC filed a reply.  (Doc. 12.)

On February 18, 2020, Moses filed a collection of "prima facie evidence." (Doc. 13.)

**DISCUSSION**

Moses's complaint asserts ten claims against UHIC: (1) negligence, (2) conspiracy, (3) discrimination, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) negligent training and supervision, (7) conversion, (8) tortious breach of contract, (9) breach of contract, and (10) punitive damages.  (Doc. 1-3.)  UHIC moves to dismiss on the grounds that (1) Moses has failed to state a claim and (2) the Court lacks jurisdiction over Moses's claims due to his failure to exhaust administrative remedies.  (Doc. 8.)  Because the second argument is dispositive, there is no need to address UHIC's other points.

I.      Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss an action for "lack of subject-matter jurisdiction."  "[I]n reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, we take the allegations in the plaintiff's complaint as true."  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The plaintiff bears the burden of establishing that subject matter jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Failure to exhaust administrative remedies may be a barrier to federal jurisdiction under Rule 12(b)(1).  *See, e.g.*, *Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015).

The Court also notes that Moses is proceeding pro se, so his complaint "must be

held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Courts "have an obligation where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

II. <u>Administrative Exhaustion</u>

"Judicial review of claims arising under the Medicare Act is available only after the Secretary [of Health and Human Services] renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g)." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984). "[A] 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Id.* at 606.

UHIC is a Medicare Advantage Organization ("MAO"), meaning it is a private insurance company that administers enrollees' Medicare benefits under the directives of the Centers for Medicare and Medicaid Services ("CMS"). (Doc. 8 at 2-3.) CMS regulations govern the process for administratively challenging a denial of benefits by a MAO (such as UHIC) and are laid out at 42 C.F.R. § 422.560-422.626. *See generally Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan*, 210 F. Supp. 3d 1225, 1229 (C.D. Cal. 2016) (discussing the administrative review process for benefits determinations by MAOs). "Section 405(g) applies to the MAO review process." *Id.* Thus, "where suit is brought against an MAO, § 405(h) limits [district courts'] jurisdiction over unexhausted claims to those that do not 'arise under' Medicare." *Id.* at 1231. *See also Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 587 (11th Cir. 2017) ("A party may only bring suit in an Article III court to challenge an [MAO] determination once all of the administrative remedies provided by the Act and its regulations have been exhausted. This is the sole pathway through which a party can obtain judicial review of any claim 'arising under' the Medicare Act.") (citation omitted).

Here, Moses has not exhausted his administrative remedies against UHIC.

Although Moses contends that he has complained to UHIC and HHS about the incidents giving rise to this lawsuit (Doc. 1-3 at 9; Doc. 11 at 2-3), he does not allege—let alone present evidence—that he appealed to a private independent contractor pursuant to 42 C.F.R. § 422.592, requested a hearing before an administrative law judge ("ALJ") pursuant to 42 C.F.R. § 422.600, or requested review of the ALJ's decision by the Medicare Appeals Council ("Council") pursuant to 42 C.F.R. § 422.608.  Because there is no final decision as required by Section 405(g), the Court cannot review Moses's claims arising under the Medicare Act.  *See*, *e.g.*, *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1116 (9th Cir. 2003) ("Because the plaintiffs have not exhausted available administrative review, the district court lacked jurisdiction to consider those of their claims that arise under Medicare, and dismissal on those claims is affirmed.").

Moses cites the "Patient Rights Act" as allowing him to commence an action without exhausting administrative remedies.  (Doc. 11 at 4-6.)  The Act states, in relevant part, that "[a]n action under this subsection may be commenced, and relief may be granted, without regard to whether the party commencing the action has sought or exhausted available administrative remedies."  S. 1993, 116th Cong. § 3(e)(2).  The Act, however, has not been enacted into law.  Additionally, it's not clear how Moses's claims would be considered a failure on the part of UHIC to exercise the "same degree of professional skill, care, and diligence to preserve the life and health of any patient as a reasonably diligent and conscientious health care practitioner would render to a patient in a different state of functionality, development, or degree of dependence."  *Id*. § 2(a)(1).  Moses's reliance on the "Patient Rights Act" is therefore unavailing.

III.  "Arising Under" The Medicare Act

The remaining question is whether Moses's claims arise under the Medicare Act. "The Supreme Court has identified two circumstances in which a claim 'arises under' the Medicare Act: (1) where the standing and the substantive basis for the presentation of the claims is the Medicare Act; and (2) where the claims are inextricably intertwined with a claim for Medicare benefits."  *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th

Cir. 2010) (internal quotations omitted). "Most courts forego the 'standing and substantive basis' test in favor of the 'inextricably intertwined' test where plaintiffs do not invoke Medicare in their complaints." *Prime Healthcare*, 210 F. Supp. 3d at 1232. "A claim is 'inextricably intertwined' [with the Medicare Act] if it does not involve issues separate from the party's claim that it is entitled to benefits and/or if those claims are not completely separate from its substantive claim to benefits." *Pinnacle Peak Neurology LLC v. Noridian Healthcare Sols. LLC*, 2018 WL 10357126, *4 (D. Ariz. 2018) (citation omitted). "In assessing whether a claim falls into either of these categories, courts must discount any creative pleading which may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes." *Id.* (internal quotations omitted). "[W]here, at bottom, a plaintiff is complaining about the denial of Medicare benefits . . . the claim 'arises under' the Medicare Act." *Uhm*, 620 F.3d at 1142-43.

Here, Moses's claims, although couched as claims arising under state law, either directly concern the denial of Medicare benefits or are not completely separate from Moses's substantive claim for benefits. The alleged wrong upon which Moses's claims for negligence, discrimination, conversion, tortious breach of contract, and breach of contract are all premised is the denial of follow-up care. (*See*, *e.g.*, Doc. 11 at 7 ["Defendant(s) have never uttered a word as to why medical follow-up care by a legitimate Medicare approved physician was denied."].) Similarly, Moses's claims for conspiracy and negligent training and supervision concern his interactions with UHIC representatives relating to his efforts to manage and secure benefits, which other courts in this circuit have held to be inextricably intertwined with claims for Medicare benefits. *See*, *e.g.*, *DiCrescenzo v. UnitedHealth Grp. Inc.*, 2015 WL 5472926, *3 (D. Haw. 2015) ("Insofar as DiCrescenzo's claims relate to the delay or mishandling of the coordination of benefits . . . , they are inextricably intertwined with a Medicare benefits decision, and DiCrescenzo must first present them to the Secretary [of HHS]."). Moses's remaining claims—intentional infliction of emotional distress, negligent infliction of emotional distress, and

punitive damages—simply assert that the behavior of UHIC and its representatives as set forth in the complaint is sufficient to sustain these respective claims.  Such claims are inextricably intertwined with Moses's claim for benefits and therefore arise under the Medicare Act.

The Court is cognizant of Moses's pro se status and sympathetic to his frustration with what he alleges to be a Kafkaesque UHIC bureaucracy.  Nevertheless, his claims are, at bottom, complaints about the denial of Medicare benefits. Judicial review of such claims is impermissible without a final administrative decision.

Accordingly, **IT IS ORDERED** that:

(1) UHIC's motion to dismiss (Doc. 8) is **granted**.

(2) This action is terminated and the Clerk of Court shall enter judgment accordingly.

Dated this 28th day of April, 2020.

Dominic W. Lanza
United States District Judge